FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA 98 JUL 27 PM 1:34
SOUTHERN DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| ANDREW THOMAS, | ] |
| | ] |
| Plaintiffs, | ] |
| | ] |
| vs. | ] CV 98-N-1598-S |
| | ] |
| DEALERS TRADE OUTLET, et al., | ] |
| | ] |
| Defendants, | ] |

ENTERED
JUL 27 1998

## MEMORANDUM OF OPINION

### I. Introduction & Background.

The Court has for consideration the June 22, 1998 motions to stay this action and to compel the plaintiff, Andrew Thomas ("Thomas"), to arbitrate his claims, filed by defendants Dealers Trade Outlet ("Dealers") and Credit Acceptance Corporation ("CAC"), respectively. On April 18, 1998, Mr. Thomas entered into a contract with defendant Dealers to purchase a 1994 Ford Aspire. On that same date, Mr. Thomas signed a Retail Buyer's Order with Dealers which contained a provision entitled, "Alternative Dispute Resolution by Binding Arbitration." *See Plaintiff's Exhibit A.* This agreement stated, in pertinent part, the following:

> That in the event dispute(s) under the terms of the said contract(s) including but not limited to, the terms of any agreement(s), the condition of the vehicle loaned or sold, the conformity of the vehicle sold to the contract, the representations, promises, undertakings or covenants made by the Dealer in connection with the sale of the vehicle, or otherwise dealing with the vehicle; all terms, promises and agreements concerning financing in connection therewith; all terms, promises and agreements of any extended service agreement or warranty; and all terms, promises and agreements concerning any credit life and/or disability insurance purchased simultaneously herewith; that Dealer and the Purchaser(s)/Lessee(s) will submit dispute(s) to binding arbitration, pursuant to the provisions of 9 U.S.C. § 1, *et seq.*, and according



to the Commercial Rules of the American Arbitration Association then existing in the county of Alabama where this sales/lease is consummated. The Alabama Rules of Evidence shall apply.

BY SIGNING BELOW, THE DEALER AND THE PURCHASER(S)/LESSEE(S) ACKNOWLEDGE THAT THEY ARE AGREEING TO RESOLVE ANY DISPUTE BETWEEN THEM BY BINDING ARBITRATION, RATHER THAN BY LITIGATION IN ANY COURT.

*Plaintiff's Exhibit A* (emphasis in original).

Also on April 18, 1998, Mr. Thomas and Dealers signed a standard "Retail Installment Contract and Security Agreement," which agreement was assigned to CAC. *See Plaintiff's Exhibit B*. On May 22, 1998, Mr. Thomas filed a civil action against Dealers and CAC in the Circuit Court of Jefferson County, Alabama, Bessemer Division. *See Plaintiff's Exhibit C*. Mr. Thomas alleges in the complaint that certain misrepresentations were made by Dealers regarding certain fees that plaintiff was required to pay in connection with the sale and purchase of the vehicle. In addition, Mr. Thomas claims that CAC failed to properly apply prepayments allegedly made by Mr. Thomas in accordance with the retail installment contract and thus committed the torts of invasion of privacy and conversion by repossessing Mr. Thomas' vehicle. Mr. Thomas also seeks "civil damages" as a result of CAC's alleged violation of the "criminal laws of the State of Alabama and the municipal criminal ordinances of the City of Hueytown in course of said repossession." *See Complaint*, Count IV, ¶¶2-3.

The defendants removed the state court action to this court on or about June 25, 1998, and contemporaneously filed their currently pending motions to compel arbitration. The motions have been briefed by the parties and are ripe for decision. Upon due consideration, the motions will be granted.

2

## II. Discussion.

Although Mr. Thomas argues that defendant CAC's motion to compel arbitration should not be granted, he essentially concedes that defendant Dealers' motion to compel arbitration is due to be granted. *See Plaintiff's Response to Defendants' Motion to Stay Action and Require Plaintiff to Submit His Disputes to Binding Arbitration*, at 4 (stating that "although the arbitration agreement may be binding between Mr. Thomas and Defendant Dealer, that agreement does not extend to the contract between Mr. Thomas and Defendant Credit [CAC]"). Because there is no dispute that Mr. Thomas signed the agreement to arbitrate on April 18, 1997, the Court concludes that Mr. Thomas is bound to arbitrate all his claims asserted against Dealers, an undisputed party to the agreement. *See Green Tree Agency v. White*, Nos. 1962094 & 1962095, 1998 WL 290176, at *1 (Ala. June 5, 1998) (recognizing the well-established rule that "'ordinarily when a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract and will be bound thereby'") (quoting *Power Equipment Co. v. First Alabama Bank*, 585 So. 2d 1291, 1296 (Ala.1991)).

Mr. Thomas vigorously contends, however, that because defendant CAC was not a party to the original arbitration agreement, CAC has no standing to compel arbitration on his claims against CAC. *See Plaintiff's Response to Defendants' Motion to Stay Action and Require Plaintiff to Submit His Disputes to Binding Arbitration*, at 4.

The "primary purpose" of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§1-16, is to ensure "that private agreements to arbitrate are enforced according to their terms." *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479, 109 S. Ct. 1248, 1255-56, 103 L. Ed. 2d 488 (1989). "Arbitration under the [FAA] is a matter of

3

consent, not coercion, and parties are generally free to structure their agreements as they see fit." *Id.* It is a cardinal principle of federal arbitration law that "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navig. Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 1353, 4 L. Ed. 2d 1409 (1960)).

In making this determination, the court should apply ordinary state common law governing the formation of contracts, with due regard for the federal policy favoring arbitration. *See Volt Info, Sciences*, 489 U.S. at 475-76, 109 S. Ct. at 1254; *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 & n.9, 115 S. Ct. 1212, 1219 & n.9, 131 L. Ed. 2d 76 (1995). Under state common law of contracts as well, a party who has not agreed to do so may not be required to submit to arbitration. *See AT&T Technologies*, 475 U.S. at 648, 106 S. Ct. at 1418; *Old Republic Ins. Co. v. Lanier*, 644 So. 2d 1258, 1260 (Ala. 1994). Beyond that, also as a general matter, one "who is not a party to a contract has no standing to compel arbitration." *Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993); *Ex parte Stallings & Sons, Inc.*, 670 So. 2d 861, 862 (Ala. 1995).

Certain exceptions may apply where nonsignatories, that is, persons or entities with whom no party to an arbitration agreement has manifestly agreed to arbitrate disputes, can obtain standing to compel signatories to arbitrate claims with them. *See, e.g., McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.*, 741 F.2d 342 (11th Cir. 1984) (equitable estoppel allows nonsignatory defendant to compel arbitration); *Sam Reisfeld & Son Import Company v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976) (nonsignatory defendants could stay

4

judicial proceedings where charges against [signatory and nonsignatory] defendants were based on the same operative facts and were inherently inseparable); see also *J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21 (4th Cir. 1988) (charges against parent company based on same facts as claim against subsidiary, with whom arbitration agreement is in effect, may be referred to arbitration also); *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990) (nonsignatory defendant, as agent of signatory defendant, may compel arbitration); *Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993); *Staples v. The Money Tree, Inc.*, 936 F. Supp. 856 (M.D. Ala. 1996) (nonsignatory defendants could compel arbitration because signatory plaintiff's claims were founded on and intertwined with underlying contract obligations).

A nonparty seeking to compel a party to arbitrate "must first, as a threshold, establish grounds, in law or equity, why it should be permitted to assert rights under a contract to which it is NOT a party." *Roberson*, 954 F. Supp. at 1527. The doctrine of equitable estoppel, exemplified by the *McBro* case, is one such ground. There, a manager and a contractor each had a contract with a hospital to work on a construction project. Both contracts contained arbitration clauses. A dispute broke out between the contractor and the manager, who had no contract between them. The court ruled that the dispute had to be arbitrated because the duties the contractor claimed were breached by the manager were duties that arose under the contractor's contract with the hospital. The assignment of duties under that contract was the basis for the lawsuit; thus the other conditions of the contract applicable to disputes, including the arbitration clause, had also to be given effect. The Eleventh Circuit stated that the dispute between the parties to the litigation was "intimately founded in and intertwined with the underlying contract obligations." *McBro*,

5

741 F.2d at 344 (quoting *Hughes Masonry Co. v. Greater Clark County School Bldg. Corp.*, 659 F.2d 836, 841 n.9 (7th Cir. 1981)). The scenario in *Hughes* was almost identical. "These decisions," the Eleventh Circuit Court of Appeals later wrote, "rest on the foundation that ultimately each party must rely on the terms of the written agreement in asserting their claims." *Sunkist Soft Drinks v. Sunkist Growers*, 10 F.3d 753, 757 (11th Cir. 1993), *cert. denied*, 513 U.S. 869, 115 S. Ct. 190, 130 L. Ed. 2d 123 (1994).

A party to an agreement can be equitably estopped from suing a nonsignatory in court when the very basis of the party's claim against the nonsignatory is that the nonsignatory breached the duties and responsibilities assigned to it by the party's agreement with the other signatory party, which agreement was governed by an arbitration clause. What is necessary is that the claim against the nonsignatory be inextricably bound up with the terms and duties of the contract Mr. Thomas has signed with the other defendant. *See McBro*, 741 F.2d at 344; *see also Goodwin v. Ford Motor Credit Co.*, 970 F. Supp. 1007, 1017 (M.D. Ala. 1997) (holding that plaintiff's claims against nonsignatory-assignee of dealer's contract were intertwined with the transaction pursuant to the terms to which the arbitration agreement was signed and thus were subject to mandatory arbitration).

In the present case, the installment sales contract between Mr. Thomas and defendant Dealers contemplated assignment and delegation of Dealers' rights and obligations to CAC upon execution of the installment sales contract. *See Plaintiff's Exhibit B*. The arbitration agreement contained in the Retail Buyer's Order, which was signed by Mr. Thomas contemporaneously with the installment sales contract, explicitly refers to the very types of claims raised here:

> That in the event dispute(s), under the terms of the said contract(s) *including but not limited to*, the terms of any agreement(s), the condition of the vehicle loaned or sold, the conformity of the vehicle sold to the contract, *the representations, promises, undertakings or covenants made by the Dealer in connection with the sale of the vehicle, or otherwise dealing with the vehicle; all terms, promises and agreements concerning financing in connection therewith; all terms, promises and agreements of any extended service agreement or warranty*; and all terms, promises and agreements concerning any credit life and/or disability insurance purchased simultaneously herewith; that Dealer and the Purchaser(s)/Lessee(s) will submit dispute(s) to binding arbitration . . .

*Plaintiff's Exhibit A* (emphasis added). These facts place Mr. Thomas's claims against defendant CAC squarely within the doctrine of equitable estoppel framework, as outlined by the Eleventh Circuit in the *McBro* and *Sunkist Softdrinks* cases, discussed *supra*. As a result, Mr. Thomas's contention that his claims against CAC are not subject to arbitration is without merit.

### III. Conclusion.

Accordingly, the Court concludes that Mr. Thomas is equitably estopped from preventing CAC from enforcing the terms of the arbitration agreement he signed with Dealers. Because the claims Mr. Thomas is asserting against CAC are inextricably bound up with obligations created by and deriving from the execution of the installment sales

7

contract, CAC has standing to compel him to abide by his agreement to arbitrate all claims[1] pertaining thereto, despite being a nonsignatory.

Done, this **27th** of July, 1998.

*[signature]*

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

---

[1] Mr. Thomas claims that the arbitration agreement should not be enforced because of "intentional or unintentional misrepresentations by the Defendant in procuring the arbitration agreement." *See Plaintiff's Response to Defendants' Motion to Stay Action and Require Plaintiff to Submit His Disputes to Binding Arbitration*, at 11. As defendant CAC points out, however, Mr. Thomas has failed to articulate what those misrepresentations might be. *See CAC's Reply Brief in Support of Motion to Compel Arbitration*, at 3. Indeed, the only alleged misrepresentations alleged by Mr. Thomas are claims regarding fraudulent inducement of the contract in general, rather than specifically directed to the procuring of the agreement to arbitrate. As the Supreme Court has recognized, a claim for fraud in the inducement of the entire contract containing the arbitration clause is itself arbitrable under the FAA. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) ("The statutory language does not permit the . . . court to consider claims of fraud in the inducement of the contract generally.").

8